# IN THE COURT OF APPEALS OF IOWA

No. 24-0710
Filed November 13, 2024

**IN THE INTEREST OF Z.C., S.C., and E.C.,**
**Minor Children,**

**J.C., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Mark C. Cord III, Judge.

A father appeals the termination of his parental rights to three children. **AFFIRMED.**

Harold K. Widdison, Sioux City, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Michelle M. Hynes, Juvenile Law Center, attorney and guardian ad litem for minor children.

Considered by Greer, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

A father appeals the termination of his parental rights to three children: E.C. (born 2014), S.C. (born 2019), and Z.C. (born 2023). The mother does not appeal. After considering our appellate jurisdiction, evaluating the father's challenge to the statutory elements, and finding his other claims waived, we affirm the juvenile court.

## I.     Background Facts and Proceedings

The mother and father were married in 2013 and are the biological parents of the three children at issue in this case. The father also has an older child (born 2011) who lived with the couple, but whose related case was severed and is not part of this appeal.

This family first came to the attention of the Iowa Department of Health and Human Services (HHS) in 2018 due to allegations of the parents' drug usage, denial of critical care, and unsafe living conditions in the family home. A child-abuse assessment in 2019 raised concerns of physical violence between the parents; abuse of alcohol, marijuana, and methamphetamine; and failure to supervise the children. E.C. and S.C. were adjudicated children in need of assistance (CINA) when both parents tested positive for methamphetamine. The family cooperated with HHS services and the case was closed in 2020.

HHS became involved again in 2021 due to renewed concerns about the parents using methamphetamine and marijuana. Both parents blamed the positive methamphetamine result on narcotic pills from Mexico belonging to a live-in friend—a "known addict." E.C. and S.C. were again adjudicated CINA, and that case closed in March 2022.

Later that year, the family was evicted from their home and stayed with a different friend who had an open child-abuse assessment with HHS. A person cleaning the house after the family was evicted found multiple needles and "hidey holes" with drug paraphernalia. These concerns triggered a third HHS investigation which resulted in a founded report for denial of critical care due to neglect of the children's medical needs.

The children were placed with their maternal aunt and uncle, where they have remained since. After placement, E.C. and S.C. required significant medical care, including extensive dental surgeries to remedy the significant decay and neglect. The guardian ad litem (GAL) expressed concerns the children were behind in school and, despite the parents' claims otherwise, the children said no homeschooling took place after the earlier HHS cases were closed. The children were again adjudicated CINA. The father again tested positive for methamphetamine and amphetamine, and he again disputed the accuracy of the results.

The mother and father experienced difficulties in their relationship, employment, and housing. They lived in separate housing and had separate visitation times. The father lived with a friend whose house was not approved for visitations, but he showed signs of progress with negative drug tests, saving money for stable housing, employment, reliable transportation, and consistent visitation. But even with these positive indicia, the GAL had concerns about the father's honesty regarding the family's eviction, believed the father had falsified documents to the juvenile court, and worried about the parents' ability to focus on

resolving their substance-abuse problems when their relationship was "in a constant state of upheaval."

The father eventually moved into his own house, where the mother kept some belongings and occasionally stayed. The father attended therapy and other services, passed drug tests, and "was good at checking the boxes," but he struggled with boundaries, parenting choices, paying rent, and honestly relaying information to HHS staff and the court. And starting in May 2023, the father was repeatedly warned by HHS that, to safely reunite with the children, the mother could not be around them. By late 2023, the mother was pregnant again with the father's child, and her lack of stability and volatile relationship with the father—often requiring police involvement—was a threat to reunification of the family. The father claimed he would divorce the mother; but neither had taken any concrete acts to this end as of trial.

Consistent with recommendations from HHS, the county attorney, and the GAL, the juvenile court terminated the mother and father's parental rights under Iowa Code section 232.116(1)(d), (f), and (h) (2023). The father appeals, and we review de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

## II. Jurisdiction

We first consider our jurisdiction over this appeal. The father timely filed a notice of appeal on April 24, 2024, but failed to file the petition on appeal within fifteen days of notice of appeal—he filed his petition five days late on May 16. *See* Iowa R. App. P. 6.201(1)(b). In response to an order from the supreme court, the father's counsel indicated he does not regularly do appellate work, misread the

expedited deadline, and had an abnormally large case load. The supreme court submitted the jurisdictional question to our court for resolution with the appeal.

While the text of the rules of appellate procedure explicitly says the "court will dismiss the appeal" if the petition on appeal is not filed within fifteen days of the notice of appeal, the supreme court has recognized delayed appeals in juvenile cases, and we are bound by those cases. *Compare* Iowa R. App. P. 6.201(3), *with In re A.B.*, 957 N.W.2d 280, 289 n.2, 292 (Iowa 2021); *W.M.*, 957 N.W.2d at 316–17. "[A] delayed appeal is allowed 'only where the parent clearly intended to appeal,' the 'failure to timely perfect the appeal was outside of the parent's control,' and the delay was 'no more than negligible.'" *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021) (quoting *A.B.*, 957 N.W.2d at 292). The record indicates the father's clear intent to appeal by timely filing the notice of appeal. *See A.B.*, 957 N.W.2d at 293. And his counsel's statement indicated the failure to timely file the petition on appeal was out of the father's control. *See id.*

The "negligible delay" requirement is not particularly clear, but both the father's timely (five days before deadline) notice of appeal and his untimely (five days late) petition on appeal were filed within thirty days of the order terminating his parental rights. This resembles the time frame in *W.M.*, where the supreme court found it had jurisdiction when the notice of appeal and petition on appeal were filed within thirty days of the termination order—even after an untimely notice of appeal. *W.M.*, 957 N.W.2d at 316–17. Concluding we lack discretion to dismiss this appeal, we have jurisdiction and can proceed to the merits. But, while we credit counsel's candid statement that "[t]here is no excuse for missing a deadline," we also observe that the cause cited in his statement—lack of familiarity with

appellate work, misreading the rules, and heavy workload—would not suffice to justify a delayed appeal under the text of the rule 6.201 absent the supreme court's contrary decisions.

### III. Discussion

The father first challenges whether there was sufficient evidence to terminate his parental rights under Iowa Code section 232.116(1)(d), (f), and (h). When the juvenile court relies on more than one statutory ground for termination, we may affirm on any of the grounds supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on section 232.116(1)(d) here.[1] We understand the father's briefing to primarily contest the first element—whether the children were physically abused or neglected—though to some extent he also addresses steps made to address the circumstance of adjudication.

For the first element, we focus on the term "neglect," which is defined by statute as "the failure on the part of a person responsible for the care of a child to provide for adequate food, shelter, clothing, medical or mental health treatment, supervision, or other care necessary for the child's health and welfare when

---

[1] The juvenile court may terminate a parent's rights under section 232.116(1)(d) when it finds both:

(1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding. This paragraph shall not be construed to require that a finding of sexual abuse or neglect requires a finding of a nonaccidental physical injury.

(2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

financially able to do so or when offered financial or other reasonable means to do so." Iowa Code § 232.2(40). The juvenile court heard testimony from the HHS worker and reviewed evidence concerning medical, educational, and dental neglect. For example, the children were overdue for medical checkups, the father reported to HHS that homeschooling was ineffective while the children reported it did not happen, and the lack of dental care in the home required some of the children to undergo surgical procedures.

Although we recognize the father claimed recent progress toward providing better care for the children as the termination trial neared, his small steps toward progress do not mean the past neglect did not happen. We consider any recent progress in the context of the entire case. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("The changes in the two or three months before the termination hearing, in light of the preceding eighteen months, are insufficient."). Despite the services offered over the years, the father has not demonstrated the ability to maintain a safe, stable home; nor has he taken steps to end his relationship with the mother despite knowing it is necessary to reunite with the children. In any event, the juvenile court largely did not believe the father's testimony he was correcting the circumstances leading to adjudication, finding:

> There is clear and convincing evidence [the children] were neglected as a result of the acts or omissions of both parents. [The parents] have been provided with a multitude of services over the past six years to correct the circumstances which brought them before this court on three separate occasions. Unfortunately, the circumstances continue to exist despite the offer or receipt of services. [The parents] argue the circumstances which brought them before this court have been resolved. However, those circumstances were resolved only due to the children's placement with their aunt and uncle, not because of anything [the parents] had done. [The parents] requested additional time to accomplish what they have been asked

to do for over a year. [The father] believes he has done "everything" [HHS] has asked; however, it has been more of a check-the-box approach and not internalizing what changes needed to be made.

Given the juvenile court's advantaged position to assess credibility and history with this case, we defer to the court's assessment of the father's truthfulness and its fact-findings findings on this issue. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016) (noting we give weight to the juvenile court's findings, especially with witness credibility). We find the challenged statutory ground for termination was supported by sufficient evidence.

Last, we recognize that six one-off sentences in the procedural summary of the father's petition on appeal appear to raise other challenges or ask for other relief. These sentences make a variety of vague claims that do not appear again later in the issues-presented-for-appeal section of the petition. And they are not supported by any independent analysis of the facts or law. "[A]s we have held before, 'sprinkled mentions of an issue' are insufficient to raise legal claims for our consideration." *In re K.P.*, No. 23-1661, 2024 WL 260885, at *3 (Iowa Ct. App. Jan. 24, 2024) (citation omitted). And beyond the lack of analysis, the father failed to preserve error on at least some of these claims, as they were not advanced nor ruled on below. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). To the extent raised, we do not address these issues any further.

**AFFIRMED.**